**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**JULIUS R. ROTH,**

                **Plaintiff,**

**-vs-**                                                                                                    **Case No. 6:08-cv-296-Orl-28DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

                **Defendant.**
_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for disability insurance benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED.**

### *I. BACKGROUND*

**A.**     **Procedural History**

Plaintiff filed for a period of disability and disability benefits on September 13, 2005. R. 12, 67-79. He alleged an (amended) onset of disability on February 2, 2006, due to a spinal epidural

abscess with epidural fibrosis and scarring and neurological damage to legs and bowel and bladder. R. 14, 66a, 67, 532. His application was denied initially and upon reconsideration. R. 47-65. Plaintiff requested a hearing, which was held on August 8, 2007, before Administrative Law Judge Robert D. Marcinkowski (hereinafter referred to as "ALJ"). R. 529-72. In a decision dated August 16, 2007, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 12-23. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 8. The Appeals Council denied Plaintiff's request on January 4, 2008. R. 4-6. Plaintiff filed this action for judicial review on February 28, 2008. Doc. No. 1.

**B.     Medical History and Findings Summary**

Plaintiff was born in December 1978 and was 28 years old at the time of the decision in this case. R. 12-23, 79, 533. Plaintiff has a high school education and past relevant work experience as a construction roofer, maintenance worker, forklift operator, railcar loader, road crew and landscaper R. 130, 135, 150.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff's limitations were caused by an epidural lumbar abscess that went untreated for weeks and caused neurological damage and residual chronic pain in his legs, back and knee and related depression. R. 129, 339, 343, 538, 544-47. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a back disorder and an affective disorder, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 14, Finding 3. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with some limitations. R. 16, Finding 5. In making this determination, the

ALJ found that Plaintiff's allegations regarding his limitations were not entirely credible for the reasons set forth in the body of the decision. R. 18. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 21, Finding 6. Considering Plaintiff's vocational profile and RFC, and based on the testimony of the VE, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 21, Finding 10. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 22, Finding 11.

Plaintiff now asserts three points of error. First, he argues that the ALJ erred by finding there was other work in the national economy that Plaintiff could perform. Second, he claims the ALJ erred in his determinations about Plaintiff's depression. Third, Plaintiff argues that good cause exists to remand the case for a *de novo* hearing before a different ALJ. For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

### *III. ANALYSIS*

#### A. **Hypothetical to the VE**

Plaintiff contends that the ALJ's finding that there were other jobs in the national economy that Plaintiff could perform was not supported by substantial evidence because the ALJ's hypothetical

questions to the vocational expert did not include all of Plaintiff's impairments and limitations. Specifically, Plaintiff contends the ALJ did not include in the hypothetical to the VE any of Plaintiff's mental limitations–moderate difficulties with concentration, persistence, and pace or social interaction restrictions–even though the ALJ found these to be limitations.  R. 15, 554-556.

The Commissioner argues that Plaintiff "either misunderstands or is intentionally misrepresenting the purpose of findings that result from the psychiatric review technique used by the ALJ" citing to R. 491, and that the ALJ properly presented a hypothetical question to the VE that included this RFC and its limitations that the ALJ found to exist. The Commissioner argues that the ALJ was required to follow the psychiatric review technique found in the regulations, 20 C.F.R. § 404.1520a, and incorporate into his decision the pertinent findings and conclusions based on the technique (20 C.F.R. § 404.1520a(e)(2)); the findings themselves from the psychiatric review technique do not represent an assessment of a plaintiff's RFC.

The ALJ did note that Plaintiff had moderate difficulties with concentration, persistence or pace but was able to handle his own financial affairs, played video games, and watched movies, citing specifically to Ex. 3E at 4-5 (R. 141-42). R. 15. The Commissioner points out that the ALJ did recite the appropriate regulatory standard in his decision (R. 15) that "the limitations identified in the 'paragraph B' and 'paragraph C' criteria [of the Psychiatric Review Technique] are not a residual functional capacity assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." The Commissioner argues that using the findings from the psychiatric review technique as an RFC finding or in a hypothetical question would conflict with the regulations, particularly Social Security Ruling (SSR) 96-8p[1] (limitations identified in the "paragraph

---

[1] The Commissioner cites SSR 96-8p; 20 C.F.R.§§ 404.1520(a)(4)(ii), (iii), (c), (d), 404.1520a(d)(1), (2); and 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 (describing paragraphs B and C of the mental disorders listings).

-5-

B" and "paragraph C" criteria of the mental disorders listings are not an RFC assessment but are used to rate the severity of a claimant's mental impairment(s) at steps two and three of the sequential evaluation process, *i.e.*, whether an impairment is severe or meets a listed impairment).

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id*. at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ incorporated into the hypothetical to the VE two functional limitations associated with Plaintiff's moderate mental difficulties with concentration, persistence and pace and social interactions. The ALJ asked the VE to add to the original hypothetical with physical limitations, that the individual "can only have occasional contact with others or interaction with others" and can "only understand, remember and carry out simple instructions, and could perform simple, routine tasks in addition" to the other limitations. R. 555. In response to the ALJ's hypothetical question, the VE identified precision assembly work and surveillance system monitor. R. 556.

The ALJ did use findings from the Psychiatric Review Techniques of state disability non-examining psychiatric professionals to conclude that Plaintiff had a severe mental impairment, but that his impairment did not meet or equal a listed impairment. R. 14-15. The ALJ later in the opinion recognized that the "mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C" and translated the "B" and "C" criteria into work-related functions in the [RFC] assessment below." R. 15. The ALJ's RFC finding

does include the limitations that Plaintiff is limited to "perform simple routine tasks with occasional interaction with others" (R. 16) which are arguably functional limitations and based on substantial evidence.

> The ALJ's RFC analysis included substantial reliance on a state medical consultant:
>
> The undersigned also has considered and accords considerable weight to the opinions of the state agency medical consultant who completed a Mental Residual Functional Capacity Assessment and who opined that the claimant was moderately limited in the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Ex. 12F and 18F [R. 418-21, 477-80]). Although the state agency medical consultants did not examine the claimant, they provided specific reasons for their opinions about the residual functional capacity showing that the opinions were grounded in the evidence in the case record including careful consideration of the claimant's allegations about his symptoms and limitations. The undersigned finds that evidence received into the record after the reconsideration determination did not provide any new or material information that would alter any findings about the claimant's residual functional capacity.

R. 20-21.

However, without any explanation, the ALJ completely ignored and failed to cite the mental health consultative mental health examination by Dr. William Austin which was conducted at the same time (R. 415-17) (November 14, 2005), as the report of one of the state non-examining mental health professional reviewers (R. 418-21) on which the ALJ relied (from December 2, 2005). The (omitted) report by Dr. Austin opined that Plaintiff's social functioning appeared limited based on reports of significant irritability and his functional ability appeared *poor* based on significant medical health problems. R. 416 (emphasis added). The ALJ inexplicably failed to comment on Dr. Austin's report; thus the ALJ's decision did not adequately consider record evidence.

-7-

### B.     Depression findings and Dr. Gutman's opinion.

Plaintiff claims that the ALJ erred in his determinations about Plaintiff's depression in the findings concerning Dr. Gutman, Plaintiff's treating psychiatrist and pain management physician.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff contends that the ALJ erroneously failed to find Plaintiff's depression to be a severe impairment, finding the only severe impairments to be "a back disorder" and an "affective disorder." The difference here boils down to a matter of semantics – Plaintiff himself alleged that his depressed mental condition was an "affective disorder" (R. 188) and the term "affective disorder" was used on the form filled out about Plaintiff's condition by Dr. Gutman. R. 508.

More importantly, Plaintiff contends that the ALJ ignored Dr. Gutman's opinion as the treating psychiatrist, failing to cite Dr. Gutman's analysis of Plaintiff's mental condition in the opinion. R. 14-15. In rejecting Plaintiff's testimony regarding his mental problems, Plaintiff contends, the ALJ mistakenly stated that Plaintiff had never received any psychiatric treatment, and had never been prescribed any psychotropic medications by a psychiatrist. R. 18. The ALJ stated:

> The claimant testified to mental problems as part of his disability; however, there is no medical evidence that demonstrates more than mild to moderate limitations in this case. Specifically, the claimant has never been referred to or received any psychiatric or psychological treatment, has never been prescribed any psychotropic medications by a psychiatrist or psychologist, or ever experienced any medically documented difficulties with activities of daily living, social functioning, concentration and task persistence, and adaptation to work or work-like situations.

R. 18.

Plaintiff argues that the ALJ's failure to recognize his mental health treatment was not based on substantial evidence, because Dr. Gutman is a psychiatrist (R. 452 - Forensic Neuropsychiatry; R. 460 - Past President, Florida Psychiatric Society; and 515a to 515c - Gutman's C.V. listing "32 years" in psychiatry), and provided psychiatric treatment to Plaintiff (R. 444-462), including prescription medications such as Xanax, Wellbutrin, Seroquel, and Kadian for Plaintiff's psychiatric problems.

The ALJ's discussion is rather odd, in that in one section of the decision, the ALJ finds that Plaintiff has not been treated by any psychiatrist, and yet in a later section quotes extensively from Dr. Gutman's notes and the MMPI-2 test results, and notes his prescriptions for Wellbutrin and Xanax for Plaintiff:

> In support of this conclusion, the undersigned references the lack of significant findings by the consultative examination. Upon mental-status examination, Dr. Gutman reported that the claimant was well-developed, well-nourished, and oriented times three. His speech was rational without any irregularities of rate, tone, volume, articulation, or enunciation. The claimant's insight was good and judgment was good. The claimant was of average intelligence. Dr. Gutman cautioned that the MMPI-2 testing should be interpreted with caution, with possibility that the clinical repot was an exaggerated picture of the claimant's present situation and problems. The claimant

-9-

> was presenting an unusual number of psychological symptoms, possible [sic] a need to seek a great deal of attention for his problems, a lack of cooperation with the testing, or malingering by attempting to present a false claim of mental illness. The doctor added that the MMPI-2 test results may paint a bolder picture than was actually the case. Dr. Gutman also reported that there was noted improvement with the claimant's emotional status. The claimant states that the anxiety and depression were well managed with the Wellbutrin and Xanax. The Wellbutrin helped his mood. The claimant added that his condition had improved since beginning treatment.

R. 20-21.

The Commissioner concedes that the ALJ *was* wrong to say there was no psychiatric care, but argues this was just "an oversight" and, with all of the other references to psychotropic medications and such, in the context of the ALJ's decision taken as a whole, the decision reflects that the ALJ considered Plaintiff's medical attention for his alleged mental impairments.

Reading the decision as a whole, the ALJ has failed to accord Dr. Gutman's opinions the appropriate weight on the issues related to Plaintiff's mental impairments. Moreover, where the ALJ did cite Dr. Gutman's findings, he mischaracterized the findings concerning Plaintiff's results on the MMPI-2 as possible "malingering" or "lack of cooperation." The portion of the MMPI-2 results cited by the ALJ is from the apparently boilerplate "computer-generated software of MMPI-2 results," and the report clearly states that portion of the results "may not accurately reflect the evaluee's actual attitude, behavior and mental condition. . . The MMPI-2 test results may paint a bolder picture than is actually the case. *It is only when the test results are interpreted in the context of the clinical interview that a true picture can be derived.*" R. 458 (emphasis added). The Commissioner also cites to this portion of the MMPI-2 results report without acknowledging that it reflects the "computer-assisted interpretation." *See* R. 456-58.

In the section of the MMPI-2 results that Dr. Gutman personally completed (as opposed to the computerized results), he opined:

-10-

> The evaluee produced a marginally valid MMPI-2. He endorsed significant emotional symptoms; however, when evaluating the individual's mental status, and the anguish and distress he was suffering associated with his chronic pain, the validity is reliable. He had an 85 on the F-scale. The computer readout suggests a diagnosis of Schizophrenia, but I do not observe psychotic symptoms. I believe this man has a very florid thought system associated with the misery and anguish he suffers. Health and anxiety concerns are high on the Content Scale profile.

R. 459.

The ALJ cannot select only the evidence that supported his findings and ignore evidence to the contrary. The ALJ also partially discounted Dr. Gutman's limitations because "the claimant underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal . . . and the context in which it was produced cannot be entirely ignored." R. 18. That is also a mischaracterization of Plaintiff's need to see a pain specialist. Dr. Greenberg, Plaintiff's treating neurologist, predicted and endorsed Plaintiff's treatment by the pain management specialist, Dr. Gutman. *See* R. 466, 463.

Dr. Greenberg first treated Plaintiff when he was hospitalized for a month for treatment of the extensive epidural lumbar abscess and characterized Plaintiff as having a "life-threatening condition" from the extensive spread of the infection. R. 331. He testified at deposition that Plaintiff should have had an urgent evaluation, and because he did not, the infection spread from the lumbar area to the soft tissues and nerves, and he lost bowel and bladder function. R. 335-39. Dr. Greenberg opined that the body's reaction to the infection caused a lot of the chemical damage to the nerve fibers – the covering over the nerves that extends into the area around the nerve fibers themselves–which causes chronic inflammation of the very fine mesh of tissue that suspends the nerve fibers in the spinal fluid spaces. R. 349-50. Plaintiff had nerve root dysfunction and the tissue around the nerve roots was consequently scarred, which Dr. Greenberg opined had caused Plaintiff to have chronic severe pain

-11-

problems from epidural fibrosis (scarring of the area around the nerve roots from the infection) and long-term inflamation, weakness in the lower extremities, loss of sensation, and chronic bowel and bladder problems. R. 345-48.

Because the ALJ omitted Dr. Gutman's reports and mental-health treatment at crucial points in his analysis of Plaintiff and mischaracterized the MMPI-2 results, his decision was not based on substantial evidence.

### C. *De novo* hearing before a different ALJ

Plaintiff contends that the Court should order the SSA to reassign Plaintiff's case to a different ALJ for a *de novo* hearing. Plaintiff's argument goes much further, arguing that "the Commissioner has not established any judicial standard of conduct for his ALJ's" and "the Commissioner does not comply with his own policy which requires a review and report on claims of unfair treatment as evidenced by the failure to investigate Mr. Roth's complaint raised to the Appeals Council." Doc. No. 13. "If a biased individual is hired by the Commissioner as an ALJ, the only safeguard claimants have is for this Court to scrutinize the record and order hearings before other unbiased ALJ's." Doc. No. 13.

The Commissioner contends that, to be disqualifying, the alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). The Commissioner argues that the ALJ's statements do not rise to the level of bias because "opinions formed on the basis of facts or events arising during the current or prior proceedings are not grounds for a recusal motion unless they display deep seated favoritism or antagonism." Doc. No. 14 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

The Court has the power to affirm, modify, or reverse the Commissioner's decision and to remand the case to a different ALJ. 42 U.S.C. § 405(g); *see also Grant v. Shalala,* 989 F.2d 1332, 1346 (3d Cir. 1993); *Pearce v. Sullivan,* 871 F.2d 61, 63-64 (7th Cir. 1989); *Miles v. Chater,* 84 F.3d 1397, 1401 (11th Cir. 1996). Sentence four under 42 U.S.C. § 405(g) states that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Other courts have held that remand to a different ALJ may be an appropriate remedy, even without an express finding of bias. *See, e.g., Miles*, 84 F.3d at 1401 (ordering remand to a different ALJ because improper statements implying that a particular doctor "always found a disability" compromised the process); *Hartnett v. Apfel,* 21 F. Supp. 2d 217, 222-23 (E.D. N.Y. 1998) (ordering remand to a different ALJ without expressly finding bias, because of the ALJ's "troubling measure of insensitivity," and because the ALJ mischaracterized and misunderstood evidence).

Plaintiff first points to statements made by the same ALJ in another case pending in the Middle District which allegedly showed bias. The Court cannot reach out to consider other unrelated cases in deciding this one[2]. Plaintiff also argues that the ALJ "unreasonably interfered" with Plaintiff's right to have his attorney cross examine the VE - whom the Plaintiff describes as an "adverse witness" – because the ALJ would not allow the VE to answer question on a hypothetical from Plaintiff's attorney which included a "GAF of 45" without any particular functional limitation on Plaintiff's ability to do work. R. 556-72. The Court finds that the ALJ's curtailing of such questioning was based on the evidence, was justified, and did not show bias.

---

[2] Moreover, in the case cited by Plaintiff, *Romanzi v. Commissioner*, 07cv1848-DAB, this Court found: "Bias requires a showing of more than mere error. As there is no reason to believe that the ALJ was nothing other than mistaken, this Court finds no reason for assignment to a new ALJ, upon remand." Doc. No. 16 at 9.

The crux of Plaintiff's disqualification argument is the ALJ's statement – which Plaintiff alleges shows "this ALJ has a bias that claimant's doctors are less honest than the Commissioner's doctors" – that discounted Dr. Gutman's report because Plaintiff was seen by Dr. Gutman "through attorney referral and in connection with an effort to generate evidence for the current appeal [and] the doctor was presumably paid for his report." R. 18. While the Court found the ALJ should have considered Dr. Gutman's report *under the facts of this case* based on Dr. Greenberg's testimony of Plaintiff's chronic pain condition and his endorsement of treatment by Dr. Gutman, the ALJ's statements reflected what in other cases would be an understandable skepticism of such a report of a physician seen in connection with litigation. The ALJ did further state: "Although such evidence [from Dr. Gutman] is certainly legitimate and deserves consideration, the context in which it was produced cannot be entirely ignored." R. 18. Although the ALJ's analysis of Dr. Gutman's reports was erroneous under the facts of this case, it does not appear to the Court, and Plaintiff has not shown that the ALJ was biased to the extent it affected Plaintiff's due process rights. Accordingly, the Court will not remand with a direction to assign the case to a different ALJ.

### *IV. CONCLUSION*

For the reasons set forth above, the administrative decision is not consistent with the requirements of law and is not supported by substantial evidence. Accordingly, the decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), for additional proceedings consistent with this opinion. The Clerk of the Court is directed to enter judgment and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 3, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record